Case number 21-1268, Michael Lissack, appellant v. Cmsnr of Internal Revenue. Ms. Brady Gitlin for the appellant. Ms. Abeta for the appellate. Good morning, Ms. Brady Gitlin. You may proceed when you're ready. Good morning. I'm Erica Brady Gitlin for the appellant. And I'm honored to be here today with my colleagues Gregory Lynham and Scott Knott. I would like to reserve two minutes for rebuttal. Item four of this case is about the IRS continuing to exercise discretion, where Congress has expressly removed that discretion from the IRS. There are three main issues presented in this case. The tax court's misapplication of the standard of review by erroneously applying abuse of discretion to these cases. The tax court's jurisdiction to hear these cases. And the tax court's erroneous finding of ambiguity within the language of Section 7623B-1. By way of context, in 2006, Congress enacted amendments to Section 7623B that added a mandatory award regime to an already existing discretionary program. Paragraph one mandates that the IRS shall pay a percentage of the amounts collected from the action that the IRS took based on the whistleblower's information. Paragraphs two and three provide when the IRS may pay less than the award mandated in paragraph one. Where Congress has mandated agency action, the action is traditionally reviewed de novo by a court, as was the case in Iowa League of Cities v. EPA. Because there is no discretion left as to whether the IRS may pay an award, there is no discretion for them to abuse. Why wouldn't the standard as under the EPA vary depending on the nature of the action being reviewed? If there was a question about the scope of the record and whether a judgment had erroneously been made to grant or deny somebody an opportunity to expand the record, maybe that would be abuse of discretion. Whereas a question about interpreting the statute and whether the regulations are supported or in conflict with the statute would be de novo. I'm not entirely sure why the presentation seems to look to just one standard. I think that there could be a logical split in standard of review if you're looking to the amount of the award. Once it's determined whether or not it is appropriate to be made, Congress should leave discretion for the IRS to determine the amount of the award within the range of 15 to 30 percent. And that would seem an appropriate place for an abuse of discretion standard of review. However, Congress has mandated that awards be paid within the context of the other things being met, within paragraph one. And that would need to be reviewed de novo. I'm interested in the argument that you identified as the ambiguity in B1. How are you reading the regulations and responding to the services contra reading? Paragraph one provides that where the secretary proceeds in an administrative or judicial action, as described in subsection A, they shall pay an award of 15 to 30 percent based on collected from the action. And the tax court, in this opinion, found that an administrative or judicial action described it, a subsection A doesn't describe an administrative or judicial action. Over the language of subsection A. Clearly describes. Describes the ability to pay awards for actions taken or the determination of an underpayment of tax or criminal liability for tax law violations. So so your argument is detecting underpayments of tax is effectively referencing something like an examination and detecting and bringing to trial would be criminal. A criminal proceeding against any person. As, for example, reference in the regulatory definition. And in fact, I take your argument also to be that before the 2006 amendments, that was that seemed to be the way the service also was treating the actions referenced in 7623A1 and 2. And we can see that not only from the Senate report, but also from various agency documents that have been produced at the time. Tell me how those how the Senate report in the agency documents support your view. So in the Senate report, there is. Language of how the program was at the time. Specifically mentioning that awards were paid for the identification of noncompliant taxpayers. It references that noncompliant taxpayer identification of a noncompliant taxpayer usually received an award of. One percent. But at the time, the award range was. One to. 10 or 15 percent, depending on what you're looking at. Which conveniently slides to the 15 to 30 percent under B. So why is if there's total discretion in the service before 2006 to. Give an award and to set the amount of it and the amount is typically under much lower guidelines. It seems like under that kind of regime, there's no real need to parse out. Which sub part or issues within an administrative action may have been ones that the whistleblowers information. I did provide the trigger. So the IRS had absolute discretion to pay awards and. My understanding was not a practice attorney at the time. All right. But my understanding of the program as it existed was that it was very frustrating for people who participated in it. As awards were really rarely paid, and even when there was a contract, it was hard to get. Review of the contract, unless there was specific language that said that the contract reviewable and that you could receive discovery. You actually still make your case, so I guess I'm saying doesn't that support the services view that there wasn't really a manifest interpretation or a practice that. That informs how we should understand an administrative action. But the IRS at the time has laid out guidelines for paying awards under the preeminent discretionary program. And your assertion is that it looked to the total award from, let's say, an examination was triggered by taxpayers information as to tax issue a. And if there's a recovery, let's say, on tax issues, a, and then B and C, that the service further uncovered through its own investigation. Your submission to us is that the service used to look at the total haul, let's say, from issues A, B and C and do a percentage from that as opposed to what its current position is, which is. We're only going to look at issue a, whether there was a recovery on that, and then decide whether we're obligated to give any award at all. That is my understanding of how it existed beforehand, and it would make sense because if you are awarding whistleblowers for their contribution to a case. Where somebody triggers the audit of a noncompliant taxpayer, the entire amount from that audit. Would not have been collected or assessed, but for the whistleblowers contribution and triggering the audit. And that's your argument about the unit size of administrative action, and I take it relying on the definition of proceeds based on that the IRS would not have initiated but for the information. That position is, in fact, within the language of Treasury Regulation 301.7623-2B1. The examples exist in dash 2B2. All right. All right, well, we'll save your rebuttal time and we'll hear from you after we hear from the service. Good morning, your honors, and may it please the court. Julia Vetta, the commissioner. A whistleblower award determination requires a sequence of events, and those events must happen in sequence. Each one is a condition of the next and a consequence of the one before. First, the whistleblower must provide information to the IRS, and that information must identify a discrete tax issue and to be significant and credible enough to investigate. The IRS must then proceed with an administrative or judicial action based on that information, and that action must result in the collection of proceeds. Only then can the whistleblower office make a determination that a whistleblower is entitled to an award. What's the cite for us saying that a whistleblower has to identify a discrete tax issue? He does not have to identify a discrete tax issue in general. There is no statutory obligation for him to do so. He must provide information that substantially contributes to the proceeds when the, as I said, it's a flow. The whistleblower must provide information. First, there is a level of IRS scrutiny to determine the value of information. That's not statutory to answer your honors' question. That is sort of an administrative determination whether this information is good enough to proceed on. So there's nothing that would alert a potential whistleblower to the salience to the commissioner of the issue. I mean, one thing that strikes me in reading the briefing in this case is that I take it the IRS functions very much in terms of issues. And that term is nowhere in the statute and nowhere in the regulations. That's correct. Because a whistleblower's information need not be limited to a single issue or to a set of related issues. A whistleblower will just provide information based on what they know, based on what they have access to about this taxpayer. And the provision of that information, that insider knowledge, was what Congress was looking to do. That was the incentive that this statutory system was set up to pay. But when one's thinking about an incentive, one is generally making some kind of prediction, assumption, and calculus about how the information would be used and what's the likelihood that it would pan out in a whistleblower award. And so where has the commissioner communicated to whistleblowers in the field that your ability to recover is going to depend on whether the issue on which the service ends up gaining revenue is the same, is an issue that your information spoke to? It answers to that question. First is in the Treasury regulation, which provides examples and demonstrates how the IRS proceeds based on whistleblower information. So the example is the only place where this distinction is really spelled out. It's where it's being most thoroughly fleshed out. But I would also push back on the sense that there needs to be, that there's a demand of a whistleblower to present a distinct issue. What they have to do is provide a tip. But if they're thinking, you know, I'm going to anger some people. I'm going to step out and blow the whistle on somebody maybe that I know or that I've worked for. But it's probably going to be worth it to me because I think when they start to dig in, they're going to see that there's a lot of underpayment. And it would be helpful to the whistleblower to understand what the scope is of the potential pool of funds in which he might eventually share. And I wonder if you can point me as sort of rigorously as possible to what might help a whistleblower understand that when we say that the administrative action is going to yield something. And then that as long as the IRS proceeded based on the information with something they wouldn't have initiated but for the information that you're not talking about. An administrative action or an examination in the way we think of sort of ordinarily one audit. You're thinking in this, you know, in this more parsed out way. That's just not at all clear to me from the regulations. First, I would direct your honor to the language of the statute 7623B1 where it's stated clearly that the determination of the amount of the award that someone would be entitled to upon this determination by the whistleblower office shall depend upon the extent to which the individual substantially contributed to such action. Now, I understand you're pointing out the ambiguity in the term action. And that's what the regulation is designed to resolve. And that's why the regulation is necessary there because of that ambiguity that you have identified. What is an action? This does not say. The statute doesn't tell you. It refers to a nonexistent antecedent. And a whistleblower who's not aware of what practice was, or even if they were aware of what practice was, still may not understand that the focus on their issue, the requirement that they substantially contribute to the particular investigation of the particular point that results in the collection of proceeds, is not there in the statute. And that's where you need to look to the reg. And the reg does make that clear. The reg defines that an action can be all or a portion of an audit. And that makes sense because you're not looking to incentivize people to go out and find taxpayers who escape the audit lottery and trigger audits and go on a fishing expedition. You want good information about actual tax avoidance strategies. Is there any penalty for a whistleblower submitting false information? Not in the award regime. There is a screening process. The form is what? 211, is it? Is that under oath? I believe it may be. I don't know. Certainly. It's a sealed part of the appendix. I don't immediately recall whether or not it is under oath. However, the incentive, obviously, is to point the IRS in the direction of a noncompliant taxpayer. And that's information that you are going to need to. I'm unable to locate it. I'm just wondering what incentive an individual would have other than not getting an award. The incentive structure in the statute may well admit of an invitation to go fishing. It may well admit of an invitation to invite the IRS to undertake an audit to see what they can find based on information that is not unique to the taxpayer, that's not original. Do you have any idea what the volume of submissions is per year? It's significant. It's in the thousands. How many? I believe it's in the thousands. There is a whistleblower report that the IRS releases annually. To Congress? To the public. It's publicly available. One thousand? One thousand or a hundred thousand? I believe it's less than a hundred thousand. The report is not in the record and there would, of course, be a new one for this year. There is an enormous volume of whistleblower claims that come in and there is an enormous effort done by the IRS at the outset to filter out the claims that are not legitimate. I don't believe there is a penalty for false information, but I can't say that to a certainty. I do believe that the information goes through a verification process, first by the whistleblower office, and then if it is significant and credible, it's referred to the operating division. There is an overlay in this whole business of prosecutorial discretion involved. I'm wondering also, if somebody goes to the whistleblower office and says that the following return is wrong in such and such a way, but if the whistleblower is correct, the IRS could collect another hundred dollars. Does the IRS have discretion to say, look, we're not going to bother with that. It's too small. We have our priorities, and we only have a limited number of revenue agents to conduct audits. The IRS does have non-enforcement discretion at the outset. The IRS can reject whistleblower claims that it does not believe are significant and credible and will lead to the collection of proceeds. Whether there's some threshold dollar value of proceeds that the IRS treats as a floor, I think we don't see in this record, and I could not state with any certainty how an individual whistleblower analyst would approach that. But it does seem that the way the statutory framework is set up, it is not staked to the quantity of proceeds. It's staked to the provision of information. And the value of the award ultimately given to a whistleblower who meets these jurisdictional prerequisites for a determination as to an award becomes a share of the proceeds ultimately collected. Now, the IRS doesn't necessarily know what proceeds will be collected if the whistleblower, say, identifies some information or an issue or issues within Judge Blard's framing that they believe will lead to the collection of a million dollars. And then the IRS decides that that's credible, initiates an action or proceeds with an action, investigates that information, and concludes at the end the adjustment is actually very small. It's only $100. You're still within this framework there. Then the whistleblower will collect their share of the proceeds out of what proceeds are ultimately recovered, regardless of what their original claim was. Can you speak to the standard of review? And I have the same question that I had for Ms. Brady-Gitlin about whether we should just look at this the way we typically look under the APA for what the nature is of the matter under review in determining what's appropriate. We would submit here that the item being reviewed or the decision being reviewed is the determination as to the award, which is discretionary within a range. And to some extent influenced by the statute, paragraphs two and three speak of ways in which that award can be adjusted within that range or outright denied if the whistleblower has committed criminal conduct in conjunction with that. I mean, but the question before us seems to turn on a legal dispute, right? Taxpayer comes in with theory A, that triggers an audit, you find a problem on theory B. Is that within the mandatory clause of B? That seems like a legal question. It's a factual question, Your Honor, to the extent that the determination must be made as a jurisdictional prerequisite because the court can only review determinations as to an award. Assume I disagree with you on that. Assume this is a merits question. The court, nonetheless, will need to verify that the proceeds were collected as a result of the action. Because the regulation is clear that the action can be all or part of an audit, the adjustment that led to the collection of proceeds is a material factual finding, whether as a jurisdictional fact or if you're looking at it on the merits. And that has to come from the record. And if that's not there in the record, then there is no established determination as to an award that's reviewable and the matter needs to be remanded or additional facts need to be requested of the whistleblower at that level. Because that's the determination that's being reviewed. The whistleblower office is making a discretionary determination. Sorry, what fact is undisputed here? Fact is undisputed? I'm sorry, it's disputed. There's a finding that the theory that the whistleblower came forward with is not the theory on which you made an adjustment. That's correct. On this record, that's not disputed. And the whistleblower has a legal argument that, assuming that fact is true, he is still entitled to recover because of his interpretation of the word action and the regulations. Yes, that's correct. And on these facts, it is purely a legal question. But the decision that is being reviewed, if it turns out that the initiation of an audit were the only action that was necessary for a whistleblower to recover proceeds, then that would be a discretion by the whistleblower office to deny the award to which the whistleblower was entitled. How is the whistleblower supposed to know what's going on inside the IRS? And how can we test the grounds on which the IRS relied in saying the issue we decided here is different from the issue on which he came forward? It seems like you're putting whistleblowers in kind of a black box and asking the tax court in this court to accept somewhat conclusory assertions that what they ended up recovering, what the service ended up recovering on, was a distinct issue from what the whistleblower came forward with. The tax court is dissatisfied with the record evidence in support of a whistleblower office determination. It can find that that was an abuse of discretion based on insufficient evidence. What if it's not dissatisfied, but it should be? I mean, what if it just said, you know, IRS told me these issues were distinct. I have no information, in that sentence being the tax court judge, no information independently to evaluate one way or the other whether the matter the whistleblower came in with is the same, different, overlapping to the one that the service ended up recovering on. But the service tells me, fine with me. Is there anything that a whistleblower who is being diligent has, any tool they have to flesh it out more? They have recourse to the tax court to review a determination regarding an award. What about in the whistleblower process? Now, before they get to the tax court, if they want to make sure that they have something to point to when they go to the tax court and say, like, they're saying this is a different issue. But if you actually look at what they did, it's the same issue with a different name or with the same name. Within the whistleblower office process, there is not that level of give and take. The whistleblower does not deal directly with the IRS back and forth in performing discovery. That's more the province of review in the tax court. The whistleblower submits information to the whistleblower office. If successful, that information is relayed to the operating division of the IRS to proceed with the administrative or judicial action. The recovery of proceeds, if any, will produce the award to the whistleblower. And then the whistleblower learns of that disposition, whether there is an award or whether there is a determination that there will not be an award given. That is, to go more precisely to Your Honor's question, in the tax court, if there is a question as to the sufficiency of the record, then that is where the whistleblower has the opportunity to seek to supplement. The whistleblower here did not do so. But the tax court decision specifically does identify that opportunity is available in a proceeding that's properly jurisdictionally before the tax court. Is the is the revenue agent report something that the whistleblower would have access to? I believe they would not generally get the the entirety of the audit, obviously, is not. I think that they do ultimately gain access to that information. I don't know if it comes as part of the determination letter. I feel it probably wouldn't. I think that that would come later during the tax proceedings. But how could they? I thought that would be taxpayer information and is protected from disclosure. It with respect to issues unrelated or actions unrelated to the whistleblower information, Your Honor. That is correct. So the entirety of the audit would not be disclosed. Doesn't get it and shouldn't get it. I'm sorry. I said that whistleblower doesn't get it and shouldn't get it. As to issues other than the one that they identified. Absolutely not. And there is a there is a danger in seeking to crack open the audit and to tether a whistleblower's recovery merely to the initiation of an action in the happenstance where they whistleblower identified a taxpayer who was not already under audit. And then to conclude that they were entitled to a fishing expedition throughout the audit to trace the correlation of proceeds to the information they provided could be disastrous and was absolutely not what Congress was seeking to incentivize in this structure. So what is the nature of the information that the that the whistleblower gets regarding what happened to the information they provided? They receive a determination letter and the letter is fairly high level. It says a determination has been made. You are not getting an award. And we did proceed based on your information with an administrative action, but we did not recover proceeds as a result of the action. The letter example in this case is at page 16 of the appendix. And the language is, as I said, very high level. We reviewed the information you provided as part of the examination, but that review did not result in the assessment of additional tax penalties, interest or additional amounts with respect to the issues you raised. The issues is stated there in the plural, even though this whistleblower identified specifically a single issue. The IRS did assess additional tax penalties, interest or additional amounts, but the information you provided was not relevant to those issues. And then there's language advising a whistleblower that there is potentially recourse in tax court. And our position in that regard would be that if the whistleblower believes that the information he provided did in fact lead to the proceeds, that inquiry would be conducted as a matter of jurisdictional fact finding in the tax court. Could I ask you about the regulatory definition of administrative action? It seems very broad. It covers all or a portion of a proceeding. It's a proceeding that may result in proceeds, and it includes an examination. It seems like under that definition, it is perfectly permissible to talk about the action as just the audit writ large, rather than trying to slice and dice the audit into a claim by claim or theory by theory approach, which is what you want. That's not an unreasonable reading of the definition at all. And in some cases, that may actually be true. In some cases, that may be 100% of the scope of the whistleblower investigation. Okay, but if the relevant action is just the audit writ large, then the information provided here did cause an action that resulted in a recovery. I'll explain why that's not. Okay. If the whistleblower here provided information, the IRS proceeded with an action based on that information, opened the audit, and the entirety of the audit consisted only of the investigation of that information. They looked at what the whistleblower said. They examined membership deposits in tax year 2008. They found nothing. They made no changes, and they said, we're done. Close it up. That's the end. Then the audit would be the action. They didn't do that. They actually noticed something in a subsequent tax year involving a different issue. But that was not due to the whistleblower's information. That was due to IRS diligence. But for sense, it was due to the whistleblower's information. As the commissioner's brief acknowledges, they would not have looked under the hood at all but for this whistleblower's information. That's correct. That's also coincidental because what if, for example, this whistleblower had identified a Fortune 500 taxpayer already under audit and said, same issue, same pointers, same quality of information. The IRS had, instead of starting an audit, merely initiated or proceeded with the administrative action as we describe it here, which is to pursue and investigate that issue. They would not have been the but-for cause of the audit by pure happenstance, based on the nature of the taxpayer, not based on their information. Would not have initiated or expanded. They would have expanded the scope in the direction of the information, potentially, if it wasn't vague and frivolous. Our position is actually that if they had undertaken to investigate a new issue of which the whistleblower's information was the but-for cause, within the definition of the regulation, that's a new action. That's what I think we're probing, is what in the regulations tells us that what you really mean when you say administrative action is all or a portion of an internal revenue service, civil or criminal proceeding that may result in proceeds. What you really mean is that administrative action is pursuit of any specific issue. Or issues. Or issues in an internal revenue service, civil or criminal proceeding. That's clearly the way the service is using it. That is not what an ordinary reader of this rule discerns. We would, again, direct them to the substantially contributed language, which is the focusing language. That's about what? The value of the information. Which, in our view, is to the extent to which the information directs the service to detect an underpayment of tax that it would not otherwise have done. And that's precise. That's not simply open an audit where there was not. You're reading B1, which says that the IRS proceeds on information provided by Whistler when the information provided substantially contributes to an action against a person. Well, here it did. It actually was the action against a person who would not have otherwise been investigated. And then later in the same rule, it talks about something that the IRS would not have initiated but for the information provided. But for the information provided. And it doesn't say that there has to be a substantial contribution to recovery on a subsidiary issue. It just says an action. And that brings us back to this difficulty in the Regulation A-2, which doesn't say it's pursuit of a specific issue. It does not. And that's why it's not. We're relying not only on the definitions but also in the examples. Because there's an example in that same regulation that's illustrative of these definitions that resolves that tension that you've identified. And it tracks the facts here. And it makes clear that when the IRS proceeds based on your information, it's looking into what you told it to look into. And if it needed to open a new audit, it's still just looking into the information you told it to look into. The action the IRS is proceeding with is viewed the same way whether the audit was ongoing or initiated by, prompted by the whistleblower's information. However, when the IRS is done with your issue, if there are no adjustments there, then there are no proceeds as a result of the action. And there is no recovery. Other issues identified in the same audit are coincidental. And they're not consequences of your whistleblower information. It's been a long time, but this whole discussion reminds me of my torts class. And the difference between but-for cause, which is necessary at a minimum and proximate cause. But-for is fine, but it's not the end. And the question is, and I'm going back about 100 years to my torts class, but it's been a while. But anyway, this whole discussion reminds me of that portion of the tort doctrine. Very much, Your Honor. Very much. Absolutely. And when you're dispersing funds from the Treasury, you want that degree of proximity. You want to be sure that if you're paying someone who has helped you detect an underpayment of tax, that it was their information that actually led you to the underpayment of tax. It didn't just prompt you to start doing your job, which then led you, in the course of normally doing your job, to find unrelated underpayments of tax. Thank you. I'd like to start by addressing Judge Randolph's questions that seem to have not been fully answered. First, the Form 211 is signed under oath and penalty of perjury. Failure to sign the form under penalty of perjury will cause a rejection. A rejection that may or may not be curable, depending on which letter the IRS sends. I'm having trouble. Are you saying that the 211 form is done under penalty of perjury? It is. It is. Very much is. The Whistleblower Office receives about 10,000 submissions in a year, a little bit more. I don't have the exact number in front of me. About 50% in the last report were rejected for reasons that were on the face of the form. There is a provision somewhere within the regs that a de minimis amount that would result in an award of under $100 need not be paid. And I'm sorry, I don't have that site in front of me. I didn't know I would need it. $100 is the minimum? They believe that anything under $100 would be de minimis. And I think when we're looking in the context of subsection B, where the amount at issue is $2 million or more, $100 is well below what math would lead us to. Factually speaking. You seem pretty knowledgeable about this. I'm grateful for filling these gaps in. But do you know, is there, does the IRS generally, forget about Whistleblower, does it have any guidelines that are published about the undertaking an audit? In other words, internal guidelines, at least, that we won't undertake an audit unless there's a pot of gold at the end of this rainbow? I don't believe there is. I know that there is a line item within the whistleblower report that says denials below IRS threshold for action. And that's about 10% of the cases that are closed for the year. But I believe the IRS, as far as which taxpayers to audit, is not a results-oriented endeavor. There's a myriad of reasons why they might choose a taxpayer. Okay, thank you. I know we're keeping you over, but I had a question just following on this discussion about administrative action and what the scope of that is and what the regulations say about what the scope of that is. And you argue that the word action is flexible, and I think take the position that where there's an ongoing audit, that administrative action would be limited to one issue. Whereas if there isn't, as in this case, that it would refer to the whole audit. And I wonder what the statutory regulatory ground is for that distinction. So when you think of what action is undertaken by the IRS in a case, if you have an individual that is one of millions of taxpayers that may or may not be audited in a particular year and has thus far been able to go about happily without having so much as received a letter from the IRS, drawing the IRS's attention to that taxpayer, which would trigger an audit, the action that the IRS takes is opening the audit. Where you have, say, a Fortune 500 taxpayer, you would never be the one that opens the audit because they're generally under continuous audit by the IRS. They're always under audit. There's usually a waiting list to get on to the next cycle even. And then it would be, how did you impact that audit? Did you open a new issue? Did you cause the IRS to look at an issue that was already under audit differently? Did they expand it further? So I guess I'm saying that if action is susceptible of that meaning, an incremental meaning rather than a sort of on-off, whole audit, no audit, in the context of an ongoing audit, then why wouldn't that same language permissibly support the commissioner's view of sort of the more, that we conceive of the audit as containing multitudes and that every issue goes to the auditing with respect to that issue. I think I've lost the thread, but I'm going to try to answer. I think I was pretty unclear in the way I wrapped up that sentence. But I take their position to be that administrative action means action relating to the information the whistleblower brought forward, not the entire examination, which is more kind of the colloquial way we might understand. There's an audit or there isn't an audit. It would be the whole thing. And I take you to be saying that the regulatory language is actually susceptible of the issue-specific understanding that that's a separate administrative action for purposes of the whistleblower regime where somebody is under continuous audit. And I guess the question then is if that's the case, why can't the IRS say the same thing when it's trying to distinguish between proceeds from a whistleblower's information and proceeds from its own investigation? So, within the statute, after you get through the bulky bit of proceeds, you come to the comma of shall pay between 15% and 30% of either proceeds collected or collected proceeds, depending on which statute you're looking at, collected from the action. The action would refer to whatever action was taken based on the whistleblower's information. So, a whistleblower who's turning in, say, Pepsi, is unlikely to have triggered an audit. Pepsi is always under audit. You may provide a new issue that the IRS wasn't looking at, or you may change how the IRS is looking at a particular issue. And at that point, the action taken based on the whistleblower's information is the, it's not the full audit, it's the issue. The incremental audit expansion. Yes. And that seems to put a lot of weight on the fortuity of whether the taxpayer is under audit at the moment the whistleblower comes forward. Yes and no. There are certain taxpayers that just based on the nature of the taxpayer will always be under audit, and there's no way around that. Whereas the smaller taxpayers are almost never under audit. And so you're kind of looking at different ways that the language fits, depending on who your taxpayer is, and the language needs to fit all taxpayers in a way that is reasonable. And slicing it into directly related adds words to the statute that just aren't there. Also, I would like to note that the IRS opened the 2009 audit of the taxpayers at issue here. Not just by happenstance, but they opened it to ensure that the membership deposits that were being treated as debt were problematic. That were, in fact, picked up in 2009 through the continuation of the same issue. And while looking at the membership deposits as debt issue, they found another related party debt issue that is where the adjustment was made. I get it. Just the colloquy this morning just tends to confirm the instinct I had as I was trying to work through the statute. Which is, it seems pretty ambiguous, both on the breadth or granularity at which you think of the relevant action and on the degree of proximity for the standard of causation. I think that when you start looking at it as a practical application, as opposed to simple theory, the clarity is much easier to discern. When you're looking at what the IRS has done with the information. If there's no grand unified legal theory and you need the practical applications to make sense of this, that might well be true. But that sort of drives me to not so much staring at the words of the statute as to thinking about example two in the regs. Example two in the regs was not originally part of the definition of proceeds based on. It was originally written for a related action and was moved after the publication of the proposed regs. Well, I mean, it's part of the reg and it has the force and effect of law. But I believe that it cuts short what the statutory language requires. If the statutory language, which says that the award shall be paid based on the amounts collected from the action, the statutory language is clear that it's the action. I mean, then we're just coming back to whether action is ambiguous or not. And action has to be a flexible term. You have a wide variety of information that the civil law office receives. Much of it is projected as speculative. About 35% last year. All right. We've taken you way over your time. We really appreciate the argument and the case is submitted.
judges: Pillard, Katsas, Randolph